USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/15/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    -against-

KRIS SERGENTAKIS,

           Defendant.

15 Cr. 33 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

Defendant Kris Sergentakis is charged in a two-count indictment with witness retaliation, in violation of 18 U.S.C. § 1513(e), and cyberstalking, in violation of 18 U.S.C. § 2261A(2). The defendant now moves to dismiss the indictment, asserting that this prosecution violates his First Amendment right to speak on matters of public concern. For the following reasons, the motion is DENIED.

## BACKGROUND

The following facts, unless otherwise noted, are taken from the December 16, 2014 complaint filed in this prosecution (the "Complaint") and the parties' memoranda of law submitted in connection with the instant motion to dismiss the indictment. The facts are not substantially in dispute.

The defendant was employed from approximately April 2001 through April 2004 as a purchasing manager in the graphics department of The Leukemia and Lymphoma Society ("LLS"), a charitable non-profit organization that funds blood cancer research. In 2006, the defendant pled guilty to charges of commercial bribery, mail fraud, and conspiracy related to his participation in a kickback scheme involving the allocation of LLS's printing contracts. The defendant was sentenced to five years of imprisonment, and ordered to pay $1,000,000 in

restitution to LLS and to forfeit $171,392.  John Walter, then LLS's Chief Financial Officer and

later its Chief Executive Officer, provided information to law enforcement officers concerning

the defendant's conduct related to the kickback scheme.  The defendant knew that Walter had

provided information to the Government.

While incarcerated in 2007, the defendant mailed numerous letters to Walter and other

LLS executives containing the following statements, among others:

- to Walter: "Remember when you told me you molested your six year old daughter and you had been arrested for it?" and "I am publishing . . . your mug shot and arrest report.  4 million flyers to be distributed in NYC + Westchester."  (Compl. at ¶ 5(a));

- to an LLS executive: "I discovered [Walter] was arrested for molesting his daughter" . . . and "[I] received 5 yrs in prison because [Walter] bought influence with a federal [j]udge."  (Compl. at ¶ 5(b)); and

- to Walter: "[e]very person on the planet will know that you are a <u>dangerous child molester</u>," and "I'll be everywhere warning people . . . when I am released I will be outside where you live, work, eat, whatever . . . I will never give up . . . [a]s long as I live this will never end."  The letter concluded, "This hasn't even started yet." (Compl. at ¶ 5(c)) (emphasis in original).

The U.S. Postal Inspection Service spoke with Walter, and reviewed law enforcement

records and databases, and confirmed that Walter has never been arrested for child molestation

or for any other state or federal offense.

Following his release from prison in 2010 and continuing through the present, the

defendant created and maintained a series of websites[1] containing similar statements to those

previously sent to Walter and LLS executives.  The defendant noted in a number of these

websites that the content contained therein did not consist of "allegations . . . only facts."  *See*,

*e.g.*, Gov't Mot. at Ex. 4 ("There are no allegations on this website only facts."), Ex. 5 (same),

---

[1] The first two instances of the website were removed by their respective web hosting services after they were contacted by LLS.  (Compl. at ¶¶ 9, 11.)  The most recent iteration of the website expired on April 19, 2015 and is pending renewal or deletion.  (Def. Mot. at 4 n.2.)  Nevertheless, other websites that appear to incorporate substantially the same content remain available as of April 24, 2015.  (*Id.*)

Ex. 7 ("Everything on this website is a known fact."), Ex. 12 ("Everything on this website is

fact... not a claim or allegation and is backed up by hard evidence."); Ex. 17 ("Everything put

forth on this site is the absolute truth.").  In addition to repeating his accusations that Walter was

arrested for child molestation, the defendant's websites included the following:

- statements that the defendant "was railroaded into federal prison for 55 months by [Walter] . . . for speaking out about [Walter's] crimes" and that Walter "manufactured a phony case against [the defendant] and sent [him] to prison."  (Compl. at ¶¶ 8(a), 17);

- a statement that Walter "enjoys beating helpless animals . . . [and] would beat [his] dog to a pulp . . . ."  (Compl. at ¶ 8(c));

- an image of a guillotine with the title "THE CURE FOR PEDOPHILLIA." Immediately below the image, the website stated: "We all have a responsibility to keep children safe from pedophiles like [Walter]."  (Compl. at ¶ 13(a));

- pictures of Walter and members of his family on vacation and at a concert, which were obtained from postings on the Facebook account of a member of Walter's family.  (Compl. at ¶¶ 13(b), (c)); and

- a statement that Walter "can rape your wife, molest your children and burn down your house."  (Compl. at ¶ 18.)

The websites also contained some statements critical of LLS's management, their use of donated

funds, and Walter's salary as Chief Executive Officer of LLS.

In addition to launching his websites, the defendant created a Facebook page containing

much of the same information described above, posted similar statements on other websites, and

emailed much of the same content to individuals, LLS donors, and the media.  For example, the

defendant posted to a website that provides information about charities to prospective donors that

Walter "had been arrested and was being held in federal prison in Manhattan . . . ."  (Compl. at ¶

22.)  The defendant also sent emails to, among others:

- the then-principal of Walter's children's school, stating "this is something u need to know about" and including a link to his website.  (Compl. at ¶ 24(a));

- a Missouri TV station, stating "the head of a major nonprofit was arrested for child molestation and case fixing," again including a link to his website.  (Compl. at ¶ 24(b)(i));

- the *New York Post*, stating "[Walter] being held at MCC Manhattan on celebrity floor where Madoff was.  Feds are trying to get him to cooperate."  (Compl. at ¶ 24(b)(iv)); and

- various organizations, including a link to his website and stating "Ask [Walter] about his dog that used to have accidents on the kitchen floor..then [Walter] would beat the dog to a bloody pulp with his bare hands.  Or you can ask him about the numerous times he got drunk and choked his wife."  (Compl. at ¶ 24(c)(iii).)

As a result of the foregoing, the defendant was charged in a two-count indictment (the "Indictment") on January 20, 2015.  Count One charges the defendant with witness retaliation against Walter (identified as "Victim-1" in the Indictment), in violation of 18 U.S.C. § 1513(e).  Count Two charges the defendant with cyberstalking, in violation of 18 U.S.C. § 2261A(2).

The defendant now moves to dismiss the Indictment on First Amendment grounds.

## STANDARD ON A MOTION TO DISMISS

"[A] defendant may raise, by pretrial motion, any defense 'that the court can determine without a trial of the general issue.'"  *United States v. Bodmer*, 342 F. Supp. 2d 176, 180 (S.D.N.Y. 2004) (quoting Fed. R. Crim. P. 12(b)).  "A defense meets this criteria if the trial of the general issue of guilt 'would be of no assistance in determining the validity of the defense.'"  *Id.* (quoting *United States v. Covington,* 395 U.S. 57, 60-61 (1969)).  "The question of the application of the First Amendment to the statute here is properly for the court rather than the jury."  *United States v. Kelner*, 534 F.2d 1020, 1028 (2d Cir. 1976) (citing *Dennis v. United States*, 341 U.S. 494, 511-15 (1951)).

"At the motion to dismiss stage, the allegations in the indictment must be taken as true." *United States v. Valencia Rugeles*, No. 04 Cr. 363 (JGK), 2007 WL 1540981, at *1 (S.D.N.Y. May 24, 2007) (citing *United States v. Goldberg,* 756 F.2d 949, 950 (2d Cir. 1985); *United*

*States v. Genovese,* 409 F. Supp. 2d 253, 255 (S.D.N.Y. 2005)). "Contrary assertions of fact by the defendant[] will not be considered." *Goldberg*, 756 F.2d at 950 (internal citation omitted). As the Government and the defendant acknowledge, the underlying facts in this case are essentially undisputed. *See* Gov't Mot. at 6, Def. Mot. at 1-8.

## DISCUSSION

The defendant's argument in the instant motion is fairly simple and straightforward: the statements he made on his websites concerning John Walter, then LLS's Chief Financial Officer and later its Chief Executive Officer, constitute protected speech on matters of public concern under the First Amendment. The Government counters that the speech at issue in the Indictment is excluded from First Amendment protection because it constitutes speech integral to criminal conduct, defamation, and/or true threats, and even if it does not fall within one or more of these unprotected categories, the speech does not address any matter of public concern and therefore does not deserve First Amendment protection.

"[S]peech on matters of public concern . . . is at the heart of the First Amendment's protection," *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-59 (1985) (internal citations and quotation marks omitted), and such speech is entitled to the highest level of protection when it comments on a public official or public figure. *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 279 (1964). Certain categories of speech, however, are traditionally not protected by the First Amendment, including, among others, speech integral to criminal conduct, *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949), defamatory speech, *Beauharnais v. Illinois*, 343 U.S. 250, 254-55 (1952), and true threats, *Watts v. United States*, 394 U.S. 705 (1969). *See United States v. Stevens*, 559 U.S. 460, 468-69 (2010) (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942)). Most importantly, statements of

fact, particularly false facts, are not protected by the First Amendment. *Kelly v. Schmidberger*, 806 F.2d 44, 47 (2d Cir. 1986) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974)).

      1.      Speech Integral to Criminal Conduct

The First Amendment does not protect "speech or writing used as an integral part of conduct in violation of a valid criminal statute." *Giboney*, 336 U.S. at 498. Relying upon this precedent, the Government asserts that the speech at issue is not protected by the First Amendment because it was integral to the criminal conduct charged in the Indictment, or in other words, served as the "means" by which the defendant waged a campaign of retaliatory harassment against Walter.

In support of this contention, the Government primarily relies on three cases rejecting as-applied challenges to the cyberstalking statute on the ground that the speech at issue was integral to the charged criminal conduct. These cases, however, deal exclusively with purely private information, to wit, the dissemination of information related to each victim's sexual experiences; they do not raise any issues related to speech purportedly made about a public figure on matters of public concern. *See United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014) (posting sexually explicit photographs of the victim on the Internet and sending them to co-workers); *United States v. Sayer*, 748 F.3d 425 (1st Cir. 2014) (creating fake social networking accounts for the victim soliciting sexual encounters and posting sexually explicit photographs of the victim on the Internet); *United States v. Petrovic*, 701 F.3d 849 (8th Cir. 2012) (posting sexually explicit photographs of, and text messages with, the victim on the Internet). *See also United States v. Matusiewicz*, No. 13 Cr. 83, 2015 WL 1409650, at *6 (D. Del. Mar. 26, 2015) (discussing the three cases cited by the Government and concluding that they relate to purely private matters).

*United States v. Cassidy*, 814 F. Supp. 2d 574 (D. Md. 2011), a case heavily relied upon by the defendant, reaches the opposite conclusion, dismissing an indictment on an as-applied

challenge to the cyberstalking statute on the ground that the complainant was a public figure and

the speech in question related to matters of public concern.  In *Cassidy*, the defendant used

Twitter and Internet blogs to wage a campaign of harassment against the leader of a Buddhist

sect.  Finding the victim to be a "well-known religious figure" who was the subject of a "critical

non-fiction book" written by a *Washington Post* journalist, and that the defendant's speech

"challenge[d] her character and qualifications as a religious leader," the Court held that the

Government's indictment was clearly directed at protected speech and did not fall within one of

the recognized exceptions, including speech integral to criminal conduct.  *Cassidy*, 814 F. Supp.

2d at 583.

The instant case presents a close question for the Court, as the factual underpinnings walk

the line between *Osinger, Sayer*, and *Petrovic* – cases concerning purely private information –

and *Cassidy*, the only case identified by the defendant and known to this Court to dismiss an

indictment on an as-applied challenge to the cyberstalking statute that implicates a public figure

and matters of public concern.  On the one hand, as the defendant contends, speech concerning

the operations of a major, public charity like LLS, and the salary and actions of its then-Chief

Financial Officer and Chief Executive Officer, would weigh in favor of this Court applying

similar reasoning to *Cassidy* and dismissing the Indictment.  On the other hand, the

Government's allegations concerning the defendant's statements align closely with the

statements supporting the indictment in *Sayer*.  There, like here, the defendant sent letters to the

victim and others, accusing the victim of being a child molester and rapist; warning some of the

recipients of the letters to "protect your children from this monster;" and stating that "[y]ou will

pray for death before I'm done."  *Compare United States v. Sayer*, No. 11 Cr. 113 (DBH), 2012

WL 1714746, at *3 (D. Me. May 15, 2012), *aff'd* 748 F.3d 425 (1st Cir. 2014) *to*, *e.g.*, Compl. ¶¶

5(a) - (c).  The question of whether this Court should follow *Cassidy*, or *Sayer* and its analogs,

therefore turns on whether Walter is a public figure and the defendant's speech implicates a

matter of public concern.

"Whether or not a person or an organization is a public figure is a question of law for the

court to decide."  *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013) (internal

citations and quotation marks omitted).  The Supreme Court has made clear that "[t]hose who, by

reason of the notoriety of their achievements or the vigor and success with which they seek the

public's attention, are properly classed as public figures."  *Gertz*, 418 U.S. at 342.  "We evaluate

whether a party is a public figure based on 'clear evidence of general fame or notoriety in the

community, and pervasive involvement in the affairs of society.'"  *Dongguk Univ. v. Yale Univ.*,

734 F.3d 113, 123 (2d Cir. 2013) (quoting *Gertz*, 418 U.S. at 352).  To the extent one cannot be

classified as an all-purpose public figure under *Gertz*, the Second Circuit will classify an

individual as a public figure for limited purposes if he:

> (1) successfully invited public attention to his views in an effort to influence others prior
> to the incident that is the subject of litigation; (2) voluntarily injected himself into a
> public controversy related to the subject of the litigation; (3) assumed a position of
> prominence in the public controversy; and (4) maintained regular and continuing access
> to the media.

*Biro*, 963 F. Supp. 2d at 270 (citing *Lerman v. Flynt Distrib. Co., Inc.*, 745 F.2d 123, 136-37 (2d

Cir. 1984)).

In *Cassidy*, the complainant was "easily identifiable [as a] public figure" due to her

position as a well-known religious leader, her 17,221 Twitter followers, and her production of

dozens of online, publicly accessible videos that were viewed over 143,000 times.  *Cassidy*, 814

F. Supp. 2d at 586 n.14.  The same cannot be said about Walter.  Relying on *Chapin v. Knight-*

*Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993), the defendant argues that Walter is a public figure

based on his then-executive positions at LLS.  Although *Chapin* did not specifically address

whether its holding that the plaintiffs – a charity and its president – were public figures for all or limited purposes, a review of the lower court's decision in *Chapin*, and the precedent cited in *Chapin* in support of the Fourth Circuit's determination, strongly imply that the application of public-figure status was made only on a limited basis.  *See Chapin v. Greve*, 787 F. Supp. 557, 568 (E.D. Va. 1992), *aff'd sub nom. Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993) ("it is worth noting that the limited record developed thus far strongly suggests that plaintiffs are at least *limited public figures*") (emphasis added); *see also Chapin*, 993 F.2d at 1092 n.4 (finding that the charity and its president were public figures with citation only to *National Foundation for Cancer Research, Inc. v. Council of Better Business Bureaus, Inc.*, 705 F.2d 98, 101 (4th Cir. 1983), a case in which the Fourth Circuit granted public-figure status for the *limited purpose* of the defamation action before the Court).  Reliance on *Chapin* to determine that Walter is a public figure for all purposes, based solely on his then-executive positions, would be improper.  The defendant has not provided, and the Court is not aware of, any other "clear evidence" of Walter's general fame, notoriety, or pervasive involvement in the affairs of society to warrant public-figure status for all purposes.

Application of the limited-purpose test in this case is equally unavailing.  "The first and foremost consideration in determining whether [an individual] is a limited issue public figure[] is [the individual's] degree of voluntar[y] involvement in the public controversy."  *Chandok v. Klessig*, 648 F. Supp. 2d 449, 458 (N.D.N.Y. 2009), *aff'd* 632 F.3d 803 (2d Cir. 2011) (citing *James v. Gannett Co.,* 40 N.Y.2d 415, 422 (1976)).  "Generally, an individual can become a limited purpose public figure only through his own actions."  *Biro*, 963 F. Supp. 2d at 274.  Here, Walter's involvement in this prosecution stems solely from the defendant's unilateral campaign of harassment against him, not by any voluntary actions of his own.  *Chandok*, 648 F. Supp. 2d

at 458 ("Generally, a party may not be made a public figure through the unilateral acts of another."). Walter is therefore not a public figure for the limited purposes of this prosecution.

Even if this Court found Walter to be a public figure, the speech at issue in this prosecution is not a matter of public concern. "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 131 S. Ct. 1207, 1216 (2011) (internal citations and quotation marks omitted). "Deciding whether speech is of public or private concern requires us to examine the content, form, and context of that speech." *Id.* (citing *Dun & Bradstreet, Inc.*, 472 U.S. at 761) (additional internal citation and quotation marks omitted).

Simply put, this prosecution concerns the defendant's campaign of personal attacks against Walter through letters, emails, and the Internet, concerning allegations of child molestation, animal cruelty, case fixing, and rape, among others. To the extent that the defendant's speech, as he contends, concerns LLS's Canadian operations, executive compensation, and management, those statements do not form the basis of the Indictment, and, at most, appear to be a thinly veiled attempt to immunize the defendant's personal attacks on Walter by claiming to speak on public issues. *See Snyder*, 131 S. Ct. at 1217.

The context in which these statements were made is particularly instructive. Although some of the defendant's statements could be protected by the First Amendment in other circumstances, these were not statements made purely for altruistic reasons as part of a critical campaign against LLS in which the defendant had long been engaged, but instead followed shortly after the defendant's 2006 guilty plea, for which he blamed Walter. (Compl. at ¶¶ 8(a),

10

17) (the defendant wrote that he "was railroaded into federal prison for 55 months by [Walter] . . . for speaking out about [Walter's] crimes" and that Walter "manufactured a phony case against [the defendant] and sent [him] to prison"); *Snyder*, 131 S. Ct. at 1217 (citing *Connick v. Myers*, 461 U.S. 138, 153 (finding public employee speech a matter of private concern when it was "no coincidence that [the speech] followed upon the heels of [a] transfer notice" affecting the employee)).

Having determined that for purposes of this prosecution Walter is not a public figure, and that the speech in question does not implicate matters of public concern, this Court declines to follow *Cassidy*.[2]  Looking to the as-applied challenges to the cyberstalking statute in *Osinger, Sayer*, and *Petrovic*, it is clear that "[a]ny expressive aspects of [the defendant's websites, letters, and emails described herein] were not protected under the First Amendment because they were integral to criminal conduct in intentionally harassing, intimidating or causing substantial emotional distress to" the defendant.  *United States v. Osinger*, 753 F.3d 939, 947 (9th Cir. 2014) (internal citation and quotation marks omitted).

2.     Defamation

The Government also argues that the speech at issue is not protected by the First Amendment because it is defamatory.  The Supreme Court has long recognized defamation as one of the categories of speech traditionally not protected by the First Amendment.  *See Beauharnais*, 343 U.S. at 254-58.  Where, as here, the speech concerns a private individual, the

---

[2] *Cassidy* is further distinguishable from this case on at least two other grounds.  First, *Cassidy* involved statements made only on Internet blogs and Twitter, which that court noted stood "in sharp contrast to a telephone call, letter or e-mail specifically addressed to and directed at another person, and that difference . . . is fundamental to the First Amendment analysis in this case." *Cassidy*, 814 F. Supp. 2d at 578.  This case, unlike *Cassidy*, involves letters and emails specifically addressed to Walter and others.  Second, in *Cassidy* "the Government never challenge[d] the notion that Defendant's Tweets and Blog postings [were] not political or religious in nature." *Id.* at 587.  Here, the Government directly challenges the notion that the speech in question is of public concern, arguing that it is virtually devoid of any constitutional value.

11

Government may "enforce a legal remedy for defamatory falsehood injurious to [his] reputation." *Gertz*, 418 U.S. at 345-46.  In order to dismiss the Indictment at this stage, the Court must find that the speech constitutes a statement of opinion, which would be entitled to protection under the First Amendment, rather than a statement of fact.  *See Kelly*, 806 F.2d at 47 ("The distinction between fact and opinion is therefore critical in determining whether a defamatory statement may be actionable.").  The Court need not determine whether "the language is [defamatory], but whether it is reasonably susceptible of such a construction."  *Id*. at 46.  To determine whether the statements at issue are protected opinion or unprotected fact, the Second Circuit outlined the following formula, which examines:

> (i) "the context in which the statements are made and the circumstances surrounding the statements;" (ii) "the language itself to determine if it is used in a precise, literal manner or in a loose, figurative or hyperbolic sense;" (iii) "[r]elated to this inquiry, we must examine the statements to determine if they are objectively capable of being proved true or false;" and (iv) "if the above analysis indicates that the statement is opinion, we must determine if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."

*Kelly*, 806 F.2d at 47-48 (quoting *Mr. Chow of New York v. Ste. Jour Azur S.A.,* 759 F.2d 219, 226 (2d Cir. 1985)).

Under a *Kelly* analysis, it is clear that the speech targeted by the Indictment concerns facts, not opinions, and is not entitled to First Amendment protection.  Despite the defendant's suggestion that his websites clearly indicated that the statements contained therein were opinions, the defendant's own words on the websites belie any such claim.  The defendant unambiguously stated on a number of iterations of his website that the content therein contained only facts.  In one particular instance, the defendant left absolutely no room for doubt about the basis for his statements: "Everything on this website is fact... not a claim or allegation and is backed up by hard evidence."  Gov't Mot. at Ex. 12.  The defendant's disclaimer stating that he

was expressing only opinions, included on some iterations of his website, does nothing to protect his otherwise self-described factual statements.  *Kelly*, 806 F.2d at 46 ("[t]he publisher of a libel may not . . . escape liability by veiling a calumny under artful or ambiguous phrases . . . .")  Moreover, the Indictment concerns not only statements made on the defendant's websites, but also postings by the defendant on others websites, as well letters and emails sent by the defendant directly to Walter and others.  The defendant does not assert that these other statements are opinions or that they included with them any disclaimers, and, in fact, the defendant largely ignores their existence in his memoranda of law in support of the instant motion.

Even ignoring the context for some of these statements – a series of websites clearly indicating that they contained facts about Walter, not allegations or opinions – and the fact that many of the statements were made in letters or emails sent directly to individuals, the next two factors of the *Kelly* analysis clearly establish that the individual statements underlying the Indictment purport to express facts, not opinions; the statements are made in a precise and literal manner, and they are objectively verifiable.  The statements, which include, among others, that Walter was "arrested for child molestation," "arrested on child pornography charges," "arrested for . . . case fixing" and was "being held at MCC Manhattan" are statements with "an apparent, unambiguous meaning, and [are] different from name-calling or rhetorical hyperbole."  *Id.* at 48.  These statements are, as the Government asserts, objectively verifiable through a review of law enforcement records, and the Government has in fact conducted such a review and concluded that there is no support for the defendant's assertions.

Because these statements consist of facts, not opinions, the Court need not reach the final factor of the *Kelly* analysis.  Though these statements are not protected by the First Amendment,

13

"[t]ruth is a defense to defamation, so [the] [d]efendant can attempt to prove that the allegedly defamatory speech here was in fact not defamatory and therefore protected expression." *See Matusiewicz*, 2015 WL 1409650 at *6 (citing *Gertz*, 418 U.S. at 345-46).

3.    True Threats

Having decided that the speech at issue falls within the First Amendment exceptions for speech integral to criminal conduct and defamation, and that it relates to neither a public figure nor a matter of public concern, the Court need not address whether the speech constitutes a true threat.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss is DENIED. The Court respectfully directs the Clerk to terminate the motion at ECF No. 18. The parties are directed to appear for a status conference at 11:15 a.m. on July 1, 2015, as previously scheduled.


Dated:   June 15, 2015                 SO ORDERED:
          White Plains, New York

NELSON S. ROMÁN
United States District Judge